# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
Thurgood Marshall U.S. Courthouse    40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

## MOTION INFORMATION STATEMENT

Docket Number(s): 10-1241

Caption [use short title]

Motion for: Disqualify Panel of Judges

Gallop v. Cheney

Set forth below precise, complete statement of relief sought:

Plaintiff-Appellant seeks an order disqualifying the panel of Judges set to hear Plaintiff-Appellant's petition for rehearing and to consider Plaintiff's response to the Court's imposition of sanctions against Plaintiff and her attorneys.

MOVING PARTY: Gallop
- [✓] Plaintiff
- [ ] Defendant
- [✓] Appellant/Petitioner
- [ ] Appellee/Respondent

OPPOSING PARTY: Cheney et al

MOVING ATTORNEY: William Veale

OPPOSING ATTORNEY: Alicia Simmons, AUSA

[name of attorney, with firm, address, phone number and e-mail]

2033 North Main Street, #1060
Walnut Creek, CA 94596
925-935-3967
292929@msn.com

100 Church Street, New York, New York 10007
alicia.simmons@usdoj.gov

Court-Judge/Agency appealed from: US District Court, SDNY

Please check appropriate boxes:

Has movant notified opposing counsel (required by Local Rule 27.1):
[✓] Yes [ ] No (explain): ___

Opposing counsel's position on motion:
[ ] Unopposed [ ] Opposed [✓] Don't Know

Does opposing counsel intend to file a response:
[ ] Yes [ ] No [✓] Don't Know

Is oral argument on motion requested? [✓] Yes [ ] No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set? [ ] Yes [✓] No If yes, enter date: ___

Signature of Moving Attorney:
_[signature]_ Date: 6/14/11

FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL:
Has request for relief been made below? [ ] Yes [ ] No
Has this relief been previously sought in this Court? [ ] Yes [✓] No
Requested return date and explanation of emergency: ___

Has service been effected? [✓] Yes [ ] No [Attach proof of service]

## ORDER

IT IS HEREBY ORDERED THAT the motion is GRANTED  DENIED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

Date: ___    By: ___

Form T-1080

```
UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
------------------------------------------------------------------------X
```
APRIL GALLOP, individually and for her minor
Child, E.G.,

                Plaintiffs-Appellant,                Docket: 10-1241

    vs.

RICHARD CHENEY, former Vice President of the      MOTION TO
United States, DONALD RUMSFELD, former            DISQUALIFY
Secretary Of Defense, General RICHARD MYERS, (Ret.),  PANEL OF
                                                                                   JUDGES

                Defendants-Appellees,

John Does Nos. 1– X, all in their individual capacities.

                Defendants.
```
------------------------------------------------------------------------X
```

      Please take notice that pursuant to 28 USC §§144 and 455(a), and upon the affirmation of William Veale, plaintiff-Appellant April Gallop hereby moves to disqualify the Panel set to consider her petition for rehearing, and rehearing *en banc*, of the decision of April 27, 2011, affirming the Order of the District Court, S.D.N.Y., Chin, J, dismissing the Complaint in this case as frivolous; and to consider therewith also her and her undersigned lawyers' Response to the Order to Show Cause re: Sanctions against them included in the Panel's decision, for filing a frivolous appeal. The Complaint charges the defendant high U.S. officials with complicity and aiding and abetting the 9/11 terrorist Attack on America; conspiracy; and cover-up. Response to the O.S.C. is due July 11, 2011.

The members of the Panel are the Hon. John M. Walker, the hHon. Ralph K. Winter and the hon. Jose A. Cabranes. The grounds alleged for their recusal is evident severe bias, based in active personal emotions arising from the 9/11 attack and its aftermath, leading to a categorical pre-judgment totally rejecting the Complaint, out of hand and with palpable animus in the decision, and completely without fair and reasonable consideration of the factual allegations put forth in support of the plaintiff's claims. They went on to unjustly sanction plaintiff and her lawyers for daring to bring such a case; specifically, for filing a frivolous appeal when it was thrown out. Further grounds lie against Judge Walker individually, under 28 U.S.C. 455(b)(5)(iii), as discussed within, which he and the Panel both previously overruled, on April 5, 2011, at oral argument.

Dated: June 14, 2011

                                                                _____/S/_____
                                                                      William W. Veale

To:    Alicia M. Simmons
        Assistant US Attorney
        86 Chamber Street
        New York, NY 10007
        By: ECF and personal delivery

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUTI
------------------------------------------------------------------------X
APRIL GALLOP, individually and for her minor
Child, E.G.,

                Plaintiffs-Appellant,         Docket: 10-1241
    vs.

RICHARD CHENEY, former Vice President of the     AFFIDAVIT
United States, DONALD RUMSFELD, former          OF WILLIAM
Secretary Of Defense, General RICHARD MYERS, (Ret.),  VEALE

                Defendants-Appellees,

John Does Nos. 1– X, all in their individual capacities.

                Defendants.
------------------------------------------------------------------------X

    I, William W. Veale, hereby state under the penalty of perjury and declare that the foregoing is true and correct to the best of my knowledge and as to those matters asserted on information and belief, I believe them to be true.

## INTRODUCTION

    1.    The undersigned, counsel for the plaintiff-Appellants herein, are petitioning separately for rehearing and rehearing *en banc* of the Panel's recent decision affirming the District Court Order dismissing the Complaint herein as frivolous; and looking ahead to responding by July 11, 2011, to the Court's finding that the appeal itself was not just frivolous but thereby contumacious, and to its Order that we Show Cause why we should not be fined $15,000 for filing it. We said in the Petition we hoped to add much additional factual material in the

Response, supporting the claims deemed frivolous in the decision, which we believe the Panel was obliged to consider and did not; so we suggest the Petition ought to be held until both can be read together, since both matters turn on the fairness of the finding(s) that the appeal, and the Complaint, were frivolous.

2. As a threshold matter, however, because of an evidently unrestrained prejudice against plaintiffs and counsel shown in the written decision, and the *nostre sponte* sanctions order, we must demand and do hereby move that the three panel members—and any other members of the bench of this Circuit who share their feelings—be recused from further participation in the Court's consideration of the case itself, and the order to show cause.

3. The pre-judgment evident in the Panel's decision is no doubt of a piece with the reaction the bulk of the population would have to the claims contained in this lawsuit. Without question, abhorrent ideas often display the power to immobilize or incapacitate normal intellectual functions, even of extraordinarily gifted and experienced people. There is another, less wholesome explanation for the court's treatment of the facts and law in this case, however: that it is simply a rank, dishonest wielding of ordained power to silence criticism. We still feel it unnecessary to adopt this view; but if it were true, it would also require the action this motion seeks, of course.

4. In addition, we are well aware of the normal rule that a judge can't be disqualified from a case for an action or ruling in that very case, but we feel the exception lies here, because the sanction, and the ruling that the complaint and appeal are frivolous, are so unjust, unfounded, and contrary to law. We say both are the product of a highly emotional, angry responses by the judges to the 'conspiracy theory' essayed in the Complaint, which arose not in the case, but from it, from the very idea, causing the Panel to mock, mischaracterize and mainly

4 4

ignore, rather than fairly and properly analyze and evaluate, the myriad complex allegations of fact alleged in support of it.

5. That is, the Panel in its decision ignored, and thus abrogated the right and the obligation that the allegations in the Complaint be fairly and objectively assessed, under Rule 8 and the Supreme Court's stricture in *Ashcroft v. Iqbal*, __U.S.__, 129 S.Ct 1937 (2009), without emotions standing in the way. Instead, we had an actionable display of prejudgment, and bias, requiring disqualification, as follows:

**1. The Court's Decision Reflects An Irremediable Prejudice.**

> "[P]laintiff certainly may allege that the most senior members of the United States government conspired to commit acts of terrorism against the United States..."

6. This Court said this, on page 6 of its decision, pointing out the obvious. Given that we had the right, and have it, the Court's outraged reaction to the plaintiffs' claims, like that of the district court in the Order appealed from, stands revealed as an expression of pure, angry bias, and pre-judgment, evidently founded on personal emotions, and devoid of any reasonable attempt at the objective assessment of the Complaint required by law. In particular, the original detailed allegations were still more broadly supported and expanded here by extrinsic evidence plaintiffs submitted, to show the claims were <u>not</u> frivolous, but well-founded, and that large numbers of people and experts take the facts supporting them very seriously, and continue to work to bring them to public attention. But the Court's determination, ignoring this evidence, was, in essence, that the claim that these defendants conspired was so outrageous, and thus so "implausible", on its face, that the facts, whatever they were, simply didn't matter.

And so they were dismissed, wholesale. The district court had done the same thing.

7. It is true the decision contains some brief discussion of a few allegations, much mischaracterized and taken out of context—and of supposed weakness or contradiction among them—as proving its judgment. But in fact the decision reflects a complete avoidance of the inventory of non-conclusory facts—or, on appeal, any consideration of the district court's failure to conduct the inventory—required by the Supreme Court's new rule interpreting Rule 8, in *Ashcroft v. Iqbal*.

8. Having thus dealt unfairly and prejudicially with the appeal itself, obviously out of anger and outrage at its substance, it is not surprising to find the Panel lashing out vindictively—to kill the messenger who brings bad news—at the lawyers who brought the case and filed the appeal.[1] Since they acknowledge that such a case charging the highest officials with an awful conspiracy "certainly" may be brought, in the first instance—a principle so self-evident that no authority was cited in the Court's decision—we must conclude that it was only the factual particulars alleged to show this conspiracy (including the cover-up), and acts in furtherance of it, which caused this Court to pronounce its judgment that this

---

[1] Even further, Judge Cabranes engaged in a most bizarre exchange with your Affirmant at oral argument—which further shows the prejudice with which the panel viewed Appellant and her counsel—interrupting him in mid-sentence to ask if he and co-counsel were admitted to practice in the Second Circuit. We cannot imagine how a Circuit Judge would not know that counsel standing before him arguing must have been admitted to practice in the Court. Mr. Ndanusa is certainly admitted here, and has been, and Mr. Veale was duly admitted upon motion and sponsorship of Mr. Ndanusa. Both paid the prerequisite fee for admission and their names appear on this court's website amongst the list of admitted attorneys. (Dennis Cunningham is no longer admitted here, as he once was, having evidently been removed from the rolls some time ago, without notice, after he withdrew from the State Bar) The only explanation we can see for such an untoward interruption was an impulse, born of bias and animus, to disrupt counsel's argument and mock and embarrass him in open court.

appeal "was 'brought without the slightest chance of success,' and therefore should not have been brought at all." (Decis, p.8)

9. This ruling was unwarranted, untoward, unfair, and, crucially, the product of an emotion-based pre-judgment. The facts were not fairly reviewed; not close. Moreover, the purported frivolousness was not shown to involve bad faith in any way, and therefore it cannot be lawfully sanctioned—as we will show in our OSC Response—even if the judgment of frivolity were allowed to stand. It must not stand, but the issue must be decided by others.

**2. The Bias Of The Panel Members, Which May Well Be Shared By Other Members of the Court, Is Based In Deep and Fervid Emotions Arising From The 9/11 Attack And Its Aftermath.**

10. Beyond the particulars of the decision, and before them—in the sense that it arose reflexively, immediately upon the judges learning what the case was about—plaintiffs consider that the prejudice against them is born of the overwhelming traumatic emotional experience of the attack and its aftermath, shared by so many who were here in New York to live through it together, and adjust to a new life and a new consciousness afterwards. Each one had to do what he or she could to heal from the shock; everyone was beset with fear and rage and lust for vengeance, mutually, collectively, along with all the other feelings people in the city experienced so intensely, and have continued to deal with in the years since. The angry, peremptory tenor of the Panel's decision, like that of the district court, leaves little doubt of these emotions' pervasive nature. It reads as the same anger and vengefulness that has been the hallmark of these feelings, throughout.

11. That is, we take it that the bias was evoked by the charges themselves, stirring up emotions that have been kept close to the surface by the continuing reverberations of the attack in public life (and we have no doubt, for Manhattanites, private life also). In the years between, after all, we the people

have become shockingly accustomed to "Long War" in Afghanistan and Iraq—and now Pakistan, Libya, Yemen and who knows where else—water-boarding and rendition, Guantanamo and Abu Ghraib, shock and awe, and a whole society, in Iraq, ripped apart and broken down by our arms, on the basis of lies.[2] Plus, in the "homeland", we now have omni-surveillance, pervasive official secrecy, myriad other forms of security mania and mindless purported patriotism on every hand, and still-growing abrogation of fundamental rights and obligations, beyond anything we ever dreamed of before 9/11; all engineered by the post-9/11 U.S. regime, which has taken us so far along towards permanent war economy, and police state.

12. These terrible things, and more, are the spawn of the "new Pearl Harbor", and its nefarious uses, which defendants and their cohorts at the Project for A New American Century yearned for, and which have truly come about in the wake of the horrific attack, as they evidently planned.

13. And all of it has been approved and supported by the decision- and opinion-makers and ruling voices who define and patrol the limits of public discourse in our Country, who swallowed whole the distortions, omissions, falsehoods of the conflict-laden official version(s) of what happened, the contradictions in which they simply avert their eyes from, the better to 'get on with the future', or whatever. No opinion and no dissent recorded anywhere in the 'mainstream' of U.S. Public life contains or is ever suffered even to suggest, any demurrer.

14. One cannot but conclude that the members of the Panel went through this change of life also, and have remained horrified and angered by the attack, and

---

[2] This was aggressive war, "the paramount international crime" under the Nuremburg Principles in international law, and a measure of evil which truly pales the murders of 9/11 into the shade. America absolutely does not admit this to herself, but it is undeniable before the wide world, and has done immeasurable damage to Our Country.

numbed by the aftermath; that, like the population at large, they also numbly accept the broad, ghastly changes that have come about in U.S. society, law, warfare, and in the world at large, because of 9/11; and that they embrace the official account of what happened, vague, contradictory and "implausible" as it is, supplied by the Government, and the defendants, since Day One.[3] Certainly the panel members showed they embraced it, the Big Lie, by their angry rejection of the very idea that there was deliberate meddling on the U.S. side, and some form of standdown order, which allowed the attack to succeed; because a New Pearl Harbor was essential to the Grand Plan of the "neocons" who had come to power with President George W, Bush, and these defendants.

---

[3] The cover story goes like this: Once there were Nineteen treacherous, crafty "middle-eastern men", fanatical to the point of suicide warfare from hatred of "our freedoms", and lured on to supposed Islamic martyrdom by the wicked archfiend Osama, who bombed two embassies, and our ship, the USS Cole, and declared holy war on America in 1998. The Nineteen—whose names we knew and pictures we had—and their accomplices, somehow eluded the vast U.S. counter-terrorism apparatus commanded by Dick Cheney (where, defendants and their cohorts insist, it was never <u>dreamed</u> that attackers might fly planes into buildings; but in fact it has been shown that the Army, the CIA, the NSA and others had actually planned and trained extensively for just such a possibility). They got themselves into the country, and prepared their mission; and some of them evidently got flight training. Then they booked, in their own names, and boarded, in groups of five, with their "box-cutters", four transcontinental flights, all on the same morning.
    And they hijacked the planes
    And on that day, despite flight controllers' routine detection of the planes moving off course, then strange voices in a cockpit and a transponder turned off, so that by 8:24 a.m. it was deemed a probable hijacking (the first tower was hit at 8:46); and despite timely FAA notice to the Military---which normally would have sent up interceptor jets very quickly, where it's three minutes from scramble to 29,000 feet, and they went up as often as twice a week—somehow there were mix-ups everywhere, and more planes seen off course, and the air defense system, and the storied impenetrable defenses at the Pentagon, failed completely.
    But no one was to blame.
    The first three planes reached their targets and thousands died, while passengers fought the hijackers heroically on the fourth, causing it to crash in a Pennsylvania field. "We're at war," the President said, "It's a War on Terror, which will last for many years." Mobilization was begun and a few weeks later, the U.S. invaded Afghanistan, then Iraq, and the war has truly lasted many, many years, and will clearly last for many more.

9 9

15. Plaintiff-Appellants thus assert, respectfully, that the panel members, living and working in the vortex of still-fresh emotions and patriotic fervor arising from the attack, appear to be altogether prejudiced and full of hard feelings against any accusation of complicity among U.S. officials, let alone a claim of outright, murderous conspiracy by commanders of the highest rank;[4] and thus they were unable to be objective and impartial in judging the merits of such a charge, and the facts put forth in support. This animus led them to ignore even so striking and sensational an item of proof as the testimony of Secretary Mineta—a perennial Democrat member of the House of Representatives, and winner of the Medal of Freedom, then serving in the Republican Cabinet, a man so eminent that a major international airport is named after him—about Cheney's standdown orders, for example.

16. They even go so far as to eschew completely any reference whatsoever to the evidence—including defendants' own fishy and contradictory statements—concerning where the defendants were and what they were doing at the time of the crime. It is as if, in reviewing the case of a liquor store robbery, you ignored a report that the suspect was seen entering the store with a mask on and a gun in his hand.

** ** ** **

17. **And Judge Walker**, as we urged, clearly was separately disqualified under 28 U.S.C. 455(b)(5)(iii) by virtue of his family connection to then-President Bush, and to his cousin Wirt Walker, then a principal in the firm providing security

---

[4] Here we remember that defendant Cheney was not just Vice President but had been placed directly in charge of all U.S. counter-terrorism operations by the president in May, 2001, and so was in command of those forces that should have responded to the many warnings that an attack was coming, but did nothing.

at the Twin Towers, each of whom surely has "an interest that could be substantially affected by the outcome" of this case, as the statute provides.

18. The clarity of this conflict of interest, complained of in a motion that was denied only at the time of the oral argument, provides further compelling reason for both his <u>and</u> this panel's recusal at this juncture. Any trial lawyer has witnessed a judge's self-recusal, for the merest shadow of improper appearance. Each member of this panel certainly knew that, for the sake of the integrity of the court, and of history, Judge Walker should have no part whatsoever in this case. Yet the record shows no impulse toward correction, even when a motion made consideration of the question unavoidable.

19. As mentioned above, there are only two conceivable explanations for conduct so starkly at odds with accepted standards. The most palatable, but still unrelentingly demanding of redress, is the existence of a biased frame of mind, which treated the allegations in the Complaint with unbending disdain and rejection. The other explanation would or should provoke a congressional investigation. In either instance, recusal is required.

**3. The Law Requires at a Minimum that The Panel Recuse Itself from Determination of the Appropriateness of the Proposed Sanctions.**

20. The decision by the Panel evinces a deep "embroilment" of the judges' feelings, in their scorn and condemnation of plaintiffs and lawyers, to the point where it's clear they cannot and would not be detached and impartial in considering the merits of their Rule to Show Cause. When judges become "embroiled" with a party or counsel or their pleadings or viewpoint, it is well-settled that their citations for contempt must be tried in another court. *Mayberry v. Pennsylvania*, 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (197?); *Offutt v. United States*, 348 U.S. 11, 75

S.Ct. 11, 99 L.Ed. 11 (19??); and see generally *In re Dellinger, et al.[and Kunstler and Weinglass, R.I.P.]*, 461 F.2d 389, 392-400 (7th Cir.1972).

21.     The thrust of those cases arises from courtroom confrontations, to be sure, as opposed to the contents of a brief or complaint; but the gravamen is the same: the judge is either considered necessarily biased, as implied from the apparent personal nature of the contemnor's statements or actions, or he has shown bias in his own.  Here we have both factors, personal aspect which normally marks the former being replaced by the implications of the 9/11 experience for those who lived through it, as outlined above; and a clear personal embroilment reflected in overt anger and impatience, and the *Iqbal* non-feasance, in the decision.  Where you scorn and find outrage in the very idea of a complete or partial "inside job", or "false flag" operation on 9-11,[5]  rather than judging the asserted evidence of it impartially, you put yourself firmly on one side of a burning and fateful issue in our country today, or set of issues, abandoning impartiality decisively.  Only such a reflexive pre-judgment can explain a decision like this.[6]

---

[5]    Notwithstanding, e.g, the Gulf of Tonkin, the U.S.S.Maine, "Polk's War" on Mexico in 1846, Operation Northwoods, the plan to "wrongfoot" Saddam Hussein so the U.S. could bomb Iraq, and like adventures in U.S. history as detailed in the Complaint and the Opposition to the Motion to Dismiss, and in the Briefs filed in this Court.

[6]    Of course many people, and surely the entire U.S. Establishment, and the "mainstream media" and kept press, obviously share the Panel's attitude and feelings about conspiracy theories about 9-11; but many do not, running into a huge percentage of the population. *Time* Magazine reported, on 9/6/06: "A Scripps-Howard poll of 1,010 adults last month found that 36% of Americans consider it "very likely" or "somewhat likely" that government officials either allowed the attacks to be carried out or carried out the attacks themselves. Thirty-six percent adds up to a lot of people. This is not a fringe phenomenon. It is a mainstream political reality. Although the 9/11 Truth Movement, as many conspiracy believers refer to their passion, has been largely ignored by the mainstream media, it is flourishing on the Internet."  We have shown, and mean to show again here, and further, broad, cogent, educated public and professional, scientific and expert as well as lay support in the Country at large for our view of what really happened.

22. We showed much along these lines in this record, particularly in our Appendix in the district court, adduced in opposition to the Government's frivolity averments, and we were entitled to have that material and those people's views and public positions considered in our defense to that charge in the district court, and to have the district court's error in ignoring that evidence considered and reversed in this Court. Likewise, we are entitled today, on the O.S.C and the rehearing petition both, to adduce the weight of that knowledge and opinion against this Court's root judgment that the appeal is frivolous. The Panel, from bias against us, ignored this right. *Ergo,* the Rule to Show Cause must be heard in a different forum.

** ** ** **

23. In sum, there has been a great failure to come to grips with the concrete factual allegations set forth in the Complaint, and still less the legitimate foundation they provide for plaintiff's charges of conspiracy and, in effect, treason, and mass murder. *Of course*, those charges are shocking, and scandalous, and will strike many people—and certainly many judges, not only those with relatives among the implicated—as extreme, and outrageous, not just implausible but impossible.

24. But we had a perfect right to allege such a conspiracy, in a Court of the United States, as the Court acknowledged; so the Panel's outrage is a personal emotional reaction of 'fear and loathing', and not the detached fair appraisal required by Rule 8, and basic Due Process, where the normal entitlement to have the facts pled taken as true must be assessed, under *Iqbal*, according to whether they are concrete, and not merely "conclusory", and therefore "disentitled" to the presumption. Neither Court has done this with anything approaching objectivity or completeness.

25. That won't do. It is shoddy jurisprudence, in an area of vital public importance; and ultimately it registers as another artifact of the cover-up. It

registers also as biased, altogether. Therefore, it is our position that the members of the Panel have demonstrated an evidently rage-besotted bias against the plaintiffs, and us as counsel in particular ("The appeal should not have been brought."); and so they are disqualified.

**Conclusion**

26. The plaintiffs and their counsel in particular assert here the right, certified by the Court as noted above, to allege conspiracy and terrorism against the highest officials; and they claim the further right to have such allegations fairly assessed when they're made, and not to be made whipping boys by affronted members of the Ruling Establishment. But the Panel has shown they will not be impartial, and perhaps cannot be; and this may well be substantially a psycho-emotional matter, beyond their control, so to speak, grown from the great stress and trauma of the 9/11 events on people here in New York, as noted; and that is a reason why other judges may also be blocked from impartiality. This would be more than plausible.

27. A judge of this or any other Court, however, who—because of continuing high emotion arising from the events which so profoundly changed Our World on 9/11—cannot be objective and thorough in applying the *Iqbal* strictures to this Complaint, *must not sit in judgment on these allegations and 'conspiracy theories*; that is clear as daylight. The Panel members here, and any like-minded colleagues, must in conscience step aside, and allow others to re-hear the Appeal and adjudicate the Rule to Show Cause.

WHEREFORE, the Undersigned respectfully but forthrightly move for the Recusal of the three judges, Winter, Walker, and Cabranes, who rendered the decision (and OSC) of April 27, 2011—and Judge Walker also for the family connection—from further consideration of this case and the matters involved; and for such Other and Further relief as may be Just and appropriate in the premises.

            Respectfully submitted,

DATED: June 13, 2011
/S/ [William Veale]

William Veale, Esq
2033 North Main Street, #1060
Walnut Creek, CA 94596
(925)-935-3987

Attorneys for Plaintiff-Appellants